**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LISA SPRING-WEBER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16 C 8097** |
| | ) | |
| **CITY OF CHICAGO, WILLIAM WONG,** | ) | |
| **and EDGAR IGNACIO SILVESTRINI,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Lisa Spring-Weber, a fire paramedic employed by the City of Chicago, has chronic Bell's Palsy. She has filed suit against the City and two of its employees—Doctor William Wong and Edgar Silvestrini—alleging that they subjected her to disparate treatment because of her disability in violation of the American with Disabilities Act (ADA) (count 1), retaliated against her in violation of the ADA (count 2), denied her benefits because of her disability in violation of the Rehabilitation Act (count 3), violated her constitutional rights under the First, Fourth, Fifth and Fifteenth Amendments (count 4), and intentionally inflicted emotional distress on her (count 5). Defendants have moved to dismiss all five counts. The Court previously considered and denied defendants' motion as to counts 1 and 2. *See Spring-Weber v. City of Chicago*, No. 16 C 8097, dkt. no. 47. For the reasons stated below, the Court partially grants the motion to dismiss count 4 but otherwise denies defendants' motion to dismiss.

**Background**

The Court takes the following facts from the allegations in Spring's[1] amended complaint.

Spring has worked as a fire paramedic for the Chicago Fire Department (CFD) since April 2004.  In 2009, she was diagnosed with severe chronic Bell's Palsy in the right side of her face.  Spring suffers from a variety of symptoms, including paralysis to the right side of her face, facial distortion and drooping, cosmetic disfigurement causing impaired speech and slurring, facial twitching, and impaired hearing.  She occasionally experiences flare-ups during which her symptoms worsen for a brief period.  Spring's doctors have provided CFD's medical division with certifications indicating that she is fit for duty as a fire paramedic.

In May 2015, Spring suffered from a flare-up of her symptoms while on duty driving an ambulance for CFD.  She experienced facial distortion and twitching, facial paralysis, drooling, a runny nose, sniffling, and eye watering.  These symptoms occurred mainly on the right side of her face, closest to the passenger seat.  Joel Weiss, another CFD employee riding as a passenger, accused Spring of falling asleep at the wheel and repeatedly told her to wake up.  When the two returned to the fire station, Weiss complained to the field chief about Spring's appearance and claimed that she fell asleep at the wheel.  As a result, Spring was pulled off duty and placed on involuntary medical leave, lasting from May to December 2015.

While on medical leave, Spring's pay rate was reduced.  She also lost the ability to work overtime and earn holiday pay, and she became ineligible for promotions.  Her

---

[1] The Court will refer to plaintiff as "Spring" because that is how her counsel refers to her in her response to defendants' motion to dismiss.

pay reduction also lowered her pension contributions during that same time period.

Spring also lost out on a transfer to a more desirable location. Around June 2015,

Spring provided the City with a certification from her treating physician, who indicated

that her condition does not interfere with her ability to safely and effectively perform her

job. Despite this, the City deemed her unfit for duty and kept her on involuntary medical

leave.

CFD employees on medical leave are required to remain in their home or other

place of recuperation to permit CFD to monitor their progress. Am. Compl., Ex. A

(General Order 10-011) at III.D.6. Employees are allowed to leave only for specific

activities, such as attending religious services, purchasing food or necessities, going to

court, or voting. *Id.* at III.D.6.a. If the employee wishes to leave Chicago, she must

demonstrate a personal emergency and receive prior approval from the command staff

of the medical section. *Id.* at III.D.6.b. Thus Spring was confined to her home under

these conditions during her period of involuntary leave.

Spring also alleges that while she was on medical leave, both Dr. Wong (CFD's

medical director) and Silvestrini (the deputy district chief for CFD's medical division)

began using department policies to harass her. Under General Order 10-011, the

medical section assigns employees a date and time to report to the medical section for

evaluation. *Id.* at III.D.1. Employees must report on the assigned date in the

appropriate dress or modified dress uniform. *Id.* at III.D.2. Failure to report or to be

prompt for a scheduled appointment may be cause for discipline. *Id.* at III.D.4.

According to Spring, Dr. Wong and Silvestrini made excessive demands for Spring to

report to the medical division, each time in dress uniform. When she arrived at the

medical division, Dr. Wong and Silvestrini would give preference to paramedics who had arrived later than Spring, despite the fact that patients are supposed to be seen in the order they arrive. As a result, she often had to wait five hours before meeting with Dr. Wong, even when she arrived an hour early. She could not leave without seeing Dr. Wong because if she did, she would receive a disciplinary warning for being "AWOL."

Additionally, Dr. Wong and Silvestrini required Spring to submit to multiple urinalysis screenings for drug and alcohol use. General Order 87-008 provides the criteria for determining when the medical section should require an employee to submit to drug tests. *See* Am. Compl., Ex. B (General Order 87-008). One situation that requires the administration of urinalysis is when the employee exhibits "[a]ny behavior or conduct on duty, which in the opinion of two supervisors, . . . evidences reasonable grounds to suspect use or excessive use of illegal drugs or alcoholic beverages." *Id.* at IV.A.5. Spring was required to undergo multiple screenings and had to provide urine samples in the presence of a City employee.

Defendants also required Spring to submit to psychiatric consultations and testing over a two-day period and ordered her to meet with a psychologist for one year. Thus far, Spring has spent approximately $1,000 on these appointments. Dr. Wong and Silvestrini also required Spring to sign a comprehensive HIPAA release form in order to permit them to access Spring's psychiatric record. When Spring protested, defendants told her that they would fire her if she did not submit to testing and sign the release form. Defendants have also singled Spring out for strenuous physical tests in order to ensure that she is fit for duty.

Spring further alleges that Dr. Wong and Silvestrini have denied her medical care

to which she is entitled. An employee who suffers an injury while on duty must have all medical services pre-approved by CFD's medical director. General Order 10-011 at III.A.7, VI.A. General Order 10-011 provides that approval shall be granted without delay based upon the treating physician's recommendation and after a determination that the treatment is consistent with generally accepted medical standards. *Id.* The purpose of this order is to avoid requiring the employee to pay for duty-related medical bills. *Id.* at VI.A. Spring suffered a duty-related injury in 2014 and requested pre-approval from Dr. Wong for her medical treatment. Dr. Wong denied approval of her treatment and has directed other City employees to shred Spring's other requests for pre-approval.

Spring alleges that Dr. Wong and Silvestrini have repeated this mistreatment with other employees. She alleges that they have systematically abused their authority in order to mistreat other disabled CFD employees who are similarly situated. Spring also alleges that the City is aware of this abuse because she and other employees have filed grievances with the Chicago Firefighter's Union Local 2 as well as with the Illinois Office of the Inspector General. At one point, Spring contacted her alderman, Edward Burke, and asked him to contact the City on her behalf. Burke contacted Silvestrini about the alleged discrimination, after which, Spring alleges, the abuse intensified.

In January 2016, Spring filed a charge of discrimination against the City with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (IDHR). In response, she alleges, the City retaliated against her in numerous ways, including transferring her to a remote location, issuing baseless disciplinary warnings, and refusing to permit her to schedule her furlough days.

5

Spring filed this suit in August 2016.  She claims in count 1 that she suffered from disparate treatment by defendants due to her chronic Bell's Palsy in violation of the ADA.  In count 2, she claims that the City retaliated against her after she filed a charge of discrimination with the EEOC and the IDHR, in violation of the ADA.  Spring claims in count 3 that defendants denied pre-approval of her medical care due to her disability in violation of the Rehabilitation Act.  In count 4, she claims that defendants' conduct violated a number of her constitutional rights.  First, Spring claims that placing her on involuntary leave constitutes a deprivation of property without due process in violation of the Fourteenth Amendment.  Next, she claims that defendants violated her Fourth Amendment rights by (1) subjecting her to unreasonable searches in the form of urinalysis tests; (2) confining her to her home during the period of medical leave; and (3) forcing her to wait in the medical waiting room for long periods of time.  Spring also claims defendants violated the Equal Protection Clause of the Fourteenth Amendment by discriminating against her due to her disability.  She claims that defendants violated her Fifth Amendment right to privacy by (1) requiring intrusive psychiatric testing and evaluation; and (2) requiring a HIPAA release of her medical records.  Finally, she claims that defendants' retaliated against her for speaking with Alderman Burke in violation of the First Amendment.  In total, Spring alleges eight different constitutional violations.  She claims that Dr. Wong and Silvestrini are each individually liable for these violations and that the City is liable as well.  In count 5, she claims that defendants' conduct amounts to intentional infliction of emotional distress.

## Discussion

Defendants have moved to dismiss all five counts of Spring's amended

6

complaint. The Court has already denied the motion to dismiss as to counts 1 and 2 and therefore considers only the three remaining counts in this opinion. Defendants argue for dismissal of count 3 on the grounds that they did not deprive Spring of any protected interest in property. In regards to Spring's constitutional claims, defendants argue that (1) their conduct does not evidence constitutional violations; (2) the City cannot be held liable for any of the allegedly unlawful conduct; and (3) Dr. Wong and Silvestrini are entitled to qualified immunity. Finally, defendants argue that the claim for intentional infliction of emotional distress should be dismissed because the claim is preempted by the Illinois Human Rights Act (IHRA), the alleged conduct is not sufficiently extreme or outrageous to support such a claim, the claim is barred under the Illinois Tort Immunity Act, and the statute of limitations restricts the actionable conduct.

To survive dismissal, a complaint must allege sufficient factual matter to state a claim to relief that is plausible on its face. *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011). In considering the defendants' motion to dismiss, the Court accepts as true all of Spring's factual allegations and draws all reasonable inferences in her favor. *See Chasensky v. Walker*, 740 F.3d 1088, 1093 (7th Cir. 2014).

I.    **Rehabilitation Act**

The Rehabilitation Act protects a qualified individual with a disability from discrimination solely because of this disability in any program receiving federal financial assistance. *Branham v. Snow*, 392 F.3d 896, 902 (7th Cir. 2004). In order to state a

claim under the Act, the plaintiff must allege that (1) she suffers from a disability; (2) she was otherwise qualified for the benefit sought; (3) she was discriminated against solely by reason of her disability; and (4) the program or activity receives federal financial assistance. *See Stevens v. Skenandore*, No. 99-2611, 2000 WL 1609404, *2 (7th Cir. 2000); *Branham*, 392 F.3d at 902. Spring alleges that she was entitled to pre-approval of medical treatment for an on-duty injury and that defendants denied this approval due to her disability. Am. Compl. ¶ 69(j)–(l). Defendants argue that Spring has failed to properly allege that she was entitled to any specific benefit because she has not alleged the circumstances of her duty-related injury or the treatment for which she sought approval. Defs.' Mem. in Supp. of Mot. to Dismiss Pl.'s Am. Compl. at 7–8. But General Order 10-011 indicates that pre-approval of expenses for duty-related injuries will be granted without delay so long as the employee's medical provider recommends the course of treatment. General Order 10-011 at V.I.A. Thus according to this policy, the nature and circumstances surrounding the duty-related injury are irrelevant in determining whether an employee is entitled to pre-approval of her medical expenses. Spring has alleged that she was injured on the job in 2014, she requested pre-approval for treatment, and defendants denied this approval because of her disability. Taking these facts as true, Spring has adequately alleged a claim under the Rehabilitation Act. The Court therefore denies defendants' motion to dismiss count 3.

## II. Constitutional claims

Spring alleges eight separate violations of her constitutional rights by defendants. Defendants argue first that their conduct does not support any claim of a constitutional violation. Alternatively, they argue that the City is not liable for any violations and that

Dr. Wong and Silvestrini have qualified immunity.

### A. Constitutional violations

#### 1. Denial of due process

Spring first claims that, by placing her on involuntary medical leave, defendants deprived her of a property interest in earnings, pension contributions, and a possible promotion, all without due process of law. A plaintiff alleging a denial of due process must allege that she has a protected property interest that she claims the defendants denied her and that the process provided was inadequate. *See Luellen v. City of East Chicago*, 350 F.3d 604, 613 (7th Cir. 2003); *Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007). Defendants argue only that Spring did not have a protected property interest in avoiding suspension; they do not argue that she failed to allege that the process was inadequate.

In order to show that an employee has a protected property interest in his continued employment, the employee typically must point to an independent source that creates the interest, such as state law or an employment contract with a state entity. *See id.*; *Swick v. City of Chicago*, 11 F.3d 85, 86 (7th Cir. 1993). Spring alleges that she has a property interest in her employment under an Illinois statute stating that no member of the fire department "shall be removed or discharged except for cause." 65 ILCS 5/10-2.1-17. As defendants argue, this statute requires cause for removal or discharge but does not mention suspension. Therefore the statute provides Spring with a property interest in avoiding removal or discharge but not in avoiding suspension. *See Townsend v. Vallas*, 256 F.3d 661, 673–76 (7th Cir. 2001); *compare Swick*, 11 F.3d at 86–87 (evaluating a statute that indicates that suspension must also be for

9

cause).

The Seventh Circuit has indicated, however, that "[e]ven in the absence of explicit statutory protection. . .[,] removal or suspension—even a suspension with pay— from a statutorily protected employment position might produce indirect economic effects that trigger the protection of the Due Process Clause." *Luellen*, 350 F.3d at 613–14. The relevant inquiry appears to be whether the property lost due to the suspension is so integral to the employee's position such that loss of the property could be deemed a loss of the employee's position. *Id*. at 614. In other words, if a plaintiff can show that a statute grants her a property interest in her continued employment, other actions short of termination—such as suspension or a reduction in pay—may sufficiently interfere with her employment so as to rise to the level of a deprivation of that interest.

Spring alleges that her suspension caused a reduction in her pension contributions and made her ineligible for promotions. Am. Compl. ¶¶ 58–59. More importantly, she alleges that she received reduced pay while on involuntary medical leave. *Id*. ¶ 56. In contrast with the "on-call pay" at issue in *Luellen*—which the court determined was not a protected property interest—Spring's regular pay could be deemed so integral to her position that loss of this pay constitutes a loss of her position. Thus Spring has adequately alleged that defendants deprived her of a property interest when they placed her on involuntary medical leave. The Court denies defendants' motion to dismiss count 4 based on the alleged denial of due process.

## 2.    Fourth Amendment violations

Spring claims that defendants violated the Fourth Amendment by subjecting her

10

to unreasonable searches in the form of urinalysis tests. Defendants argue that, because Spring works in a safety-sensitive position, compelled drug testing does not violate the Fourth Amendment. It is true that warrantless drug testing of an employee may be permissible when the employee occupies a safety-sensitive position. *Krieg v. Seybold*, 481 F.3d 512, 517 (7th Cir. 2007). But even in such a case, a court is still required to balance the intrusion on the employee's constitutional rights against the search's promotion of a legitimate government interest to determine whether the drug test was constitutional. *Id.* Thus even if it were undisputed from Spring's allegations that she occupied a safety-sensitive position, this fact alone does not preclude her from claiming that she has the right to be free from warrantless drug testing by her employer.

Spring next claims that defendants subjected her to an unlawful seizure when they confined her to her home as a condition of involuntary medical leave. Defendants argue that the home confinement policy is rationally related to CFD's legitimate interest in preventing abuse of sick leave policies. The Seventh Circuit has indicated, however, that policies confining employees to the home while on medical leave may violate the Constitution. *See Pienta v. Vill. of Schaumburg*, 710 F.2d 1258, 1260 (7th Cir. 1983). In *Pienta*, the Court concluded that the Village's home confinement policy infringed employees' rights "to vote, to exercise freely their religion by church attendance, to go to court, to attend political or family gatherings, and to travel." *Id.* Defendants argue that the same is not true for the policy at issue here because it provides exceptions for an employee's exercise of constitutional rights. *See* Defs.' Mem. in Supp. of Mot. to Dismiss Pl.'s Am. Compl. at 9. CFD's general policy does permit an employee on medical leave to leave her home in order to attend religious services, go to court, vote,

obtain food or necessities, and bring a child to or from school, among other things. General Order 10-011 at III.D.6.a. But the policy does not permit the employee to leave in order to attend political or family gatherings. Further, the policy indicates that the employee cannot leave the boundaries of Chicago unless it is for an emergency and the employee receives prior approval from the medical section command staff. *Id.* at III.D.6.b. This is similar to the policy in *Pienta*, which required an employee to get authorization from the chief of police before leaving the state and which the court concluded infringed the plaintiff's right to travel. *Pienta*, 710 F.2d at 1260. Spring has therefore adequately alleged that the defendants' home confinement policy violates her constitutional rights.

Finally, Spring claims that defendants subjected her to an unlawful seizure when they forced her to remain in the waiting room for five-hour periods, knowing she would receive a disciplinary mark if she left without completing her appointment. It certainly is not the case that every work-related requirement that assigns an employee to a particular location constitutes an unlawful seizure. And Spring does not cite any case law to support her claim that this particular conduct rises to the standard required for a constitutional violation.

The Court grants defendants' motion to dismiss Spring's claim that they violated her Fourth Amendment rights to the extent that it is based on being confined to the waiting room but otherwise denies the motion with regard to Spring's Fourth Amendment claim.

### 3. Equal protection

Spring next claims that defendants discriminated against her due to her disability

12

in violation of the Equal Protection Clause.  Defendants argue that Spring cannot bring both an equal protection claim and a claim under the ADA when the claims are based on the same conduct.  The Seventh Circuit has not expressly considered whether Congress intended the ADA to preclude simultaneous constitutional claims.  But the court has previously held in the context of Title VII claims that both the Fourteenth Amendment and Title VII "grant public sector employees independent rights to be free of employment discrimination" and thus that Title VII is not the exclusive remedy for employment discrimination.  *Ratliff v. City of Milwaukee*, 795 F.2d 612, 624 (7th Cir. 1986) (internal quotation marks omitted); *see also Holmes v. Godinez*, 311 F.R.D. 177, 230–31 (N.D. Ill. 2015) (holding that the ADA does not preclude equal protection claims brought under section 1983 based on the same conduct).  The Court concludes that Spring's ADA claim does not prevent her from also asserting an equal protection claim.

Defendants also argue that Spring's equal protection claim is essentially a "class-of-one" claim, and that public employees are prohibited from bringing such claims. Defs.' Mem. in Supp. of Mot. to Dismiss Pl.'s Am. Compl. at 10.  Defendants are correct in their assertion that public employees cannot bring class-of-one claims.  *See Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 604–05 (2008).  But this means only that public employees cannot bring an equal protection claim based on allegations that a government employer "made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner."  *Id.* at 605.  The Court in *Engquist* went on to affirm a public employee's ability to bring an equal protection claim "when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently."  *Id.*  Here, Spring alleges that defendants

13

discriminated against her based on her disability—i.e. on her membership in a specific class. She does not allege that the defendants acted "solely for arbitrary, vindictive or malicious reasons." *Id.* at 596. Thus Spring is not alleging a "class-of-one" claim. The Court denies defendants' motion to dismiss Spring's equal protection claim.

### 4. Fifth Amendment claims

Spring claims that defendants violated her right to privacy under the Fifth and Fourteenth Amendments by requiring her to sign a HIPAA release form to permit defendants access to her psychiatric records and requiring her to undergo intrusive psychiatric testing and evaluation.

The privacy interest protected by the Fourteenth Amendment "includes a 'qualified' constitutional right to the confidentiality of medical records and communications." *Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 566 (7th Cir. 2009). Defendants argue again that because Spring works in a safety-sensitive position, requiring disclosure of her confidential medical records does not violate the Constitution. But as discussed earlier, the Court is still required to determine whether CFD has a legitimate interest under the circumstances in requiring its fire paramedics to release their medical history. *See id.* Thus even if Spring holds a safety-sensitive position, she has sufficiently stated a Fifth Amendment claim based on the required disclosure of medical records.

The Seventh Circuit has not determined whether this right to confidentiality extends to mandatory psychiatric testing. *See Flynn v. Sandahl*, 58 F.3d 283, 290 (7th Cir. 1995) (citing a First Circuit case affirming the existence of such a right). In a later case, the court suggested that such a claim may exist under the Fifth Amendment. *See*

14

*Greenawalt v. Indiana Dep't of Corr.*, 397 F.3d 587, 592 (7th Cir. 2005). Defendants argue that the court in *Coffman* expressly indicated that even if such a right exists, it unquestionably must give way to public interest in the context of firefighters. *See Coffman*, 578 F.3d at 566 (indicating that the court "do[es] not second-guess the propriety of such an evaluation for a firefighter"). The court in *Coffman*, however, was evaluating a claim that compelled psychiatric testing violated the ADA. *Id.* at 565. The ADA prohibits such testing unless the examination is "job-related and consistent with business necessity." *Id.* Thus the court's the determination that this standard was met for firefighters does not necessarily indicate that the same conclusion would result for a claim brought under the Constitution. Therefore the Court denies the defendants' motion to dismiss Spring's claims based on her right to privacy.

### 5. First Amendment retaliation

Finally, Spring claims that defendants violated her rights under the First Amendment by retaliating against her for speaking with Alderman Burke about the allegedly discriminatory treatment. To establish a claim for retaliation in violation of the First Amendment, a public employee must establish that she spoke as a private citizen on a matter of public concern. *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016). Defendants correctly argue that Spring has failed to allege that she spoke on a matter of public concern. Spring alleges that she contacted Burke in order to ask him "to contact the City regarding its discriminatory conduct on her behalf." Am. Compl. ¶ 71(d). Thus the objective of Spring's speech was to further a purely private interest. *See Kubiak*, 810 F.3d at 483. Her allegations reflect that her goal was to air and correct a personal grievance against her employer and therefore her speech was not protected

15

by the First Amendment. *See id.* The Court dismisses Spring's claim for violation of the First Amendment.

### 6. Conclusion

In summary, the Court concludes that Spring has stated claims for violations of her constitutional rights based on involuntary medical leave, random drug testing, the home confinement policy, disability discrimination, psychiatric testing, and the HIPAA release form. The Court concludes that Spring has not stated claims for violations of her constitutional rights based on the waiting room confinement and retaliation for her conversation with Burke. The Court therefore grants defendants' motion to dismiss count 4 to the extent it is based on the latter allegations.

### B. Municipal liability

Defendants next argue that even if Spring has adequately alleged constitutional violations, the City cannot be held liable under section 1983 for the conduct of its employees. In order to sustain a claim under section 1983 against a municipality—known as a *Monell* claim—plaintiff must "demonstrate that the entity's official policy, widespread custom, or action by an official with policy-making authority was the moving force behind his constitutional injury." *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (internal quotation marks omitted). Defendants argue that Spring has failed to state *Monell* claims against the City on any of these three bases; Spring argues that she has alleged facts supporting all three.

### 1. Official policy

An unconstitutional policy can be express or can "take the form of an implicit policy or a gap in expressed policy." *Id.* The only examples that Spring provides of

express policies that form the basis for defendants' allegedly unlawful conduct are the provision of General Order 10-011 that requires those on medical leave to remain in their home and the provision of General Order 87-008 that dictates when employees can be subjected to random drug testing. Am. Compl. ¶ 31. Defendants do not argue that these do not constitute official policies. The Court concludes that Spring can proceed with her constitutional claims against the City under a theory of official policy based on these two alleged constitutional violations.

Spring also alleges that gaps in the department's official policies gave Dr. Wong and Silvestrini discretion to implement the policies in a way that lead to the remaining constitutional violations. She first alleges that General Order 10-011 gives Dr. Wong discretion to determine when to pre-approve medical expenses, which permits constitutional abuses. Am. Compl. ¶ 21. But the order provides that pre-approval shall be granted without delay based upon the treating physician's recommendation. General Order 10-011 at III.A.7. There does not appear to be a gap in the policy that implies that the medical director can or should deny pre-approval based on an employee's disability. Spring also points to the fact that the order gives Dr. Wong the discretion to require employees on medical leave to report to the medical division for appointments. But earlier the Court determined that Spring failed to allege a constitutional violation based on defendants' conduct in requiring her to report for appointments. Thus there is no basis for *Monell* liability based on this gap. Spring also points to an alleged gap in the drug testing policy, which permits drug testing when two supervisors are of the opinion that an employee's behavior evidences reasonable grounds to suspect use of illegal drugs or alcohol. The Court agrees that this provision may constitute a gap that

implies that CFD supervisors need not comply with constitutional standards before imposing warrantless drug testing on their employees.

The Court concludes that Spring has alleged grounds for *Monell* liability based on a theory of official policy only for Defendants' home confinement and drug testing.

### 2. Widespread custom

In order to support a claim for *Monell* liability based on custom, a plaintiff must allege facts that permit an inference that the allegedly unconstitutional practice was widespread and that the specific violations were not isolated incidents. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). The court in *Gill* determined that the complaint was insufficient where the plaintiff failed to allege the existence of other incidences of similar conduct. *See id.*

Spring has alleged that other CFD employees have filed grievances with the Union and the Illinois Office of the Inspector General based on conduct similar to that which she experienced. Am. Compl. ¶ 71(b)–(c). She also alleges that these grievances made the City aware of abuse of the relevant department policies. *Id.* ¶ 71. Thus she has sufficiently alleged that the practices she complains of were widespread and that her treatment was not an isolated incident. The Court therefore finds that Spring can proceed with all of her *Monell* claims based on a theory of widespread custom.

### 3. Policy-making authority

The mere fact that an individual is the decision-maker on a particular issue does not necessarily mean he has policy-making authority for purposes of a *Monell* claim. *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009). Spring

alleges that Dr. Wong and Silvestrini have policy-making authority when it comes to executing CFD's general orders because they have discretion to implement them as they see fit. Am. Compl. ¶¶10–29. But by and large, the general orders dictate the terms of CFD's policy on involuntary medical leave, pre-approval of medical expenses, and employee drug testing. The fact that Dr. Wong and Silvestrini had discretion in some areas of execution does not by itself support a claim that they had policy-making authority in the areas covered by the policy. *See Valentino*, 575 F.3d at 675 ("The fact that a particular official . . . has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on the exercise of that discretion."). Spring's allegations support an inference that Dr. Wong and Silvestrini were constrained by department policies and therefore did not have policy-making authority for the matters at issue. *See id.* at 676. The Court therefore concludes that Spring cannot support a claim of *Monell* liability under this theory.

### C. Qualified immunity

Under the doctrine of qualified immunity, government officials are shielded from liability for civil damages "where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Akande v. Grounds*, 555 F.3d 586, 589 (7th Cir. 2009). Defendants Dr. Wong and Silvestrini argue that even if Spring has sufficiently alleged that they violated her constitutional rights, the rights were not clearly established at the time of their alleged conduct. The Court considers only the constitutional violations that remain following the rulings described in Part II.A of this opinion.

In light of the Seventh Circuit's ruling in *Luellen* that a suspension can constitute

a deprivation of a protected property interest, Spring has adequately alleged that defendants' decision to place her on involuntary medical leave without due process violated a clearly established right.  Further, the court's ruling in *Pienta* indicates that confining employees to their homes as a condition of sick leave without the freedom to exercise all of their constitutional rights is a clearly established violation of these rights. The Court also concludes that imposing different conditions on an employee because of her disability can violate rights clearly established under the Equal Protection Clause. Therefore the Court denies the defendants' motion to dismiss count 4 as brought against the individual defendants seeking civil damages based on the involuntary medical leave, the home confinement, and the disability discrimination.

Defendants' decision to subject Spring to drug testing, however, does not violate a clearly established right, given that other circuits have determined that a firefighter qualifies as safety-sensitive position subject to warrantless drug testing and the absence of contrary authority from the Seventh Circuit.  *See, e.g.*, *Wilcher v. City of Wilmington*, 139 F.3d 366, 375 (3d Cir. 1998).  Further, defendants' decisions to subject Spring to psychiatric testing and to require a HIPAA release do not violate a clearly established right to privacy, given that the Seventh Circuit has not yet determined whether this right prohibits psychiatric testing or whether there is always an overriding safety interest in the case of firefighter personnel.  The Court therefore dismisses count 4 as to Dr. Wong and Silvestrini to the extent Spring seeks damages from them based on the drug testing, the psychiatric testing, and the HIPAA release form allegations.

D.    **Conclusion**

In summary, the Court dismisses count 4 against all defendants to the extent that

20

it is based on Spring's confinement in the medical waiting room and retaliation for her conversation with Burke. The Court also dismisses count 4 against Dr. Wong and Silvestrini to the extent it is based on the drug testing, the psychiatric testing, and the HIPAA release form allegations. The Court otherwise denies the defendants' motions to dismiss count 4.

## III. Intentional infliction of emotional distress

Spring's final claim is that all of the conduct alleged in the previous counts constitutes intentional infliction of emotional distress (IIED). Defendants argue that (1) the IIED claim is preempted by the IHRA; (2) their conduct was not sufficiently extreme to support such a claim; (3) Spring is barred from bringing this claim against Dr. Wong and Silvestrini by the Tort Immunity Act; and (4) the statute of limitations prevents Spring from basing this claim on conduct that occurred prior to August 15, 2015.

The IHRA gives the Illinois Human Rights Commission exclusive jurisdiction over state civil rights violations and therefore preempts common law claims that seek redress for violations that fall within those defined in the statute. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006); *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 515–16, 639 N.E.2d 1273, 1276 (1994). The relevant inquiry for determining whether the IHRA preempts an IIED claim is not whether the facts supporting the IIED claim could also have supported a claim under the IHRA, but whether the plaintiff can prove the elements of the IIED claim independent of legal duties furnished by the IHRA. *Naeem*, 444 F.3d at 604. The Court concludes that Spring can do so here. A claim for IIED requires a showing of extreme and outrageous conduct; intent to inflict emotional distress; and causation. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 268–69, 798 N.E.2d 75,

21

79–80 (2003).  The conduct that Spring alleges can qualify as extreme and outrageous, independent of whether it also violates the IHRA.  Spring alleges that she was placed on involuntary leave, confined to her home, forced to undergo drug and psychiatric testing, denied compensation for medical treatment, transferred to a remote location, denied transfers or promotions to other positions, and denied the ability to schedule her furlough days.  Even assuming that none of this conduct was motivated by Spring's disability—and therefore cannot serve as the basis for a civil rights violation—this conduct could give rise to a claim for IIED.  Further, this conduct could rise to the requisite level of severity necessary to bring such a claim, despite defendants' argument to the contrary.  Spring has alleged repeated instances of unjustified mistreatment by the defendants based on matters beyond her control—a chronic medical issue—which would have substantially impaired her ability to do her job.  The Court concludes that the IIED claim is not preempted by the IHRA and Spring has alleged conduct that is sufficiently outrageous to support such a claim.

The Court also concludes that Spring is not barred from bringing this claim against Dr. Wong and Silvestrini by the Tort Immunity Act.  The Act provides that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201.  In order for an employee to be entitled to immunity, his acts must constitute both a determination of policy and an exercise of discretion.  *Brooks v. Daley*, 2015 IL App (1st) 140392, ¶ 13, 29 N.E.3d 1108, 1113.  Defendants have successfully argued, however, that Dr. Wong and Silvestrini were not determining department policy

when they used discretion to carry out the department's general orders. Thus they are not entitled to immunity under the Tort Immunity Act.

Finally, defendants argue that Spring's IIED claim cannot be based on any conduct that occurred prior to August 15, 2015, based on the one-year statute of limitations for IIED claims. *See* 745 ILCS 10/8-101. But the Illinois Supreme Court has indicated that where the defendant exhibits continuing unlawful acts and conduct— known as a "continuing tort"—the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease. *Feltmeier*, 207 Ill. 2d at 278, 798 N.E.2d at 85. Under these circumstances, claims based on conduct that occurred outside of the typical limitations period can survive so long as the complaint was filed within one year of the final injury or tortious act. Given the possibility that defendants' conduct amounts to a continuing tort, the Court declines at this stage to limit Spring's IIED claim to conduct occurring after August 15, 2015.

### Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss in part [dkt. no. 35]. Specifically, the Court dismisses count 4 as to all defendants to the extent that the claim is based on Spring's alleged confinement in the waiting room and retaliation for speaking with Alderman Burke. The Court also dismisses count 4 as to Dr. Wong and Silvestrini to the extent it is based on allegations involving drug and psychiatric testing and signing the HIPAA release form. The Court otherwise denies defendants' motion to dismiss.

_____

MATTHEW F. KENNELLY
United States District Judge

Date: April 10, 2017